IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANTE BRZOVIC, )<br>)<br>    Plaintiff, )<br>v. )<br>)<br>NATIONAL COLLEGIATE )<br>ATHLETIC ASSOCIATION, )<br>)<br>    Defendant. )<br>_____ ) | Civil Action No.:   2:25-cv-02885-DCN |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

1.    Plaintiff Ante Brzovic brings this action to challenge Bylaw 12.8.1 (the "Five-Year Rule") and related eligibility rules of Defendant, the National Collegiate Athletic Association ("NCAA"). These bylaws limit the number of years college basketball players can play Division I NCAA basketball, particularly after transferring from a Division II school. This action seeks declaratory and injunctive relief against the Defendant, in addition to other remedies, based on the NCAA's denial of Plaintiff's waiver request for an additional year of eligibility.

## PARTIES

2.    Plaintiff Ante Brzovic is a college basketball player who most recently played at the College of Charleston ("C of C"), a Division I institution, and resides in Charleston, Charleston County, South Carolina.

3.    In 2020, Plaintiff initially enrolled at Southeastern Oklahoma State University ("SE Oklahoma"), a Division II school, to play college basketball. His initial enrollment at SE Oklahoma was for the 2020-2021 academic year (during which he redshirted), and he remained enrolled there until transferring to C of C in May 2022.

4.     Defendant NCAA is an unincorporated association that acts as the governing body of college sports, with over 1,100 member colleges and universities across the United States, including institutions in Charleston County, South Carolina. These member institutions are organized into three divisions, with Division I comprising over 350 schools.

5.     Through the NCAA Constitution and Bylaws, the NCAA and its members have adopted regulations governing college sports, including Bylaws 12.8 and related eligibility rules at issue here. These rules constitute horizontal agreements among the NCAA, its member institutions, and between member institutions.

6.     Institutions seeking to participate meaningfully in top-tier collegiate athletics must maintain NCAA membership and comply with Division I rules, risking punitive measures for noncompliance.

7.     The NCAA and its member institutions control the highest level of collegiate athletics, requiring athletes like Plaintiff, who seek the substantial benefits of Division I competition, to attend an NCAA Division I institution.

8.     No practical alternatives exist to the unique combination of benefits offered by Division I NCAA schools, including: (i) high-quality academic services, (ii) elite training facilities, (iii) top-tier coaching, (iv) exposure to professional scouts and agents, (v) national publicity through championships and broadcasts, (vi) significant Name, Image, and Likeness ("NIL") opportunities, and (vii) competition at the highest collegiate level.

9.     If not granted an additional year of eligibility, Plaintiff will lose the opportunity to continue playing Division I basketball in the 2025-2026 season and maximize his NIL earnings, estimated to be a minimum of $1 million for that year.

10. Plaintiff has entered his name into the NCAA's Transfer Portal and has been offered the opportunity to enroll at multiple other Division I institutions,

11. On April 1, 2025, the NCAA formally denied his waiver request, submitted on March 21, 2025, causing him significant harm.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under Section 1 o the Sherman Act, 15 U.S.C. § 1, Sections 4 and 26 of the Clayton Act, 15 U.S.C. § 26, and under 28 U.S.C. §§ 1331 and 1337.

13. This Court may exercise specific personal jurisdiction over Defendant NCAA in Charleston County, South Carolina, based on its contacts with South Carolina, including athletic competitions, ticket sales, merchandise, television agreements, and revenue-generating activities directed at the state.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## FACTS OF THE CASE

15. Plaintiff, an international student from Croatia, enrolled at SE Oklahoma in August 2020, redshirting the 2020-2021 season to learn English and adjust to U.S. college life amid the COVID-19 pandemic.

16. In the 2021-2022 season, Plaintiff competed in 28 games at SE Oklahoma, starting in 16 games, and was named Freshman of the Year in his conference. Despite this success, the 2021-2022 season was a "lost year" for the Plaintiff due to significant mental stress, language barriers, and cultural adjustments that hindered his development and precluded NIL opportunities available at the Division I level.

17. Plaintiff transferred to C of C in May 2022, where he played three seasons (2022-2025), earning $75,000 in NIL income in 2023-2024 and $300,000 in NIL income in 2024-2025, with potential earnings of at least $1 million for an additional year (2025-26) at a Division I institution.

18. On March 21, 2025, C of C submitted a waiver request to the NCAA, seeking an additional year of eligibility for Plaintiff, citing his unique circumstances—language barriers, cultural adjustments, and limited Division II opportunities—as mitigating factors under NCAA Division I Bylaw 12.8.1.7.1.1 ("Circumstances Beyond Control").

19. Following the submission, the NCAA notified C of C that they would be amending the submission to remove the Division I Bylaw as the applicable cite for the submission, and the NCAA would be changing it to NCAA Division II Bylaw 14.4.3.7 "Season of Competition Waiver."

20. The NCAA denied the waiver request on April 1, 2025.

21. Plaintiff has no choice but to initiate this action against the NCAA given that the deadline for Plaintiff to enter his name into the National Basketball Association ("NBA") Draft, as a last resort, is April 26, 2025 and because every day that he waits to initiate this action he loses out on opportunities to commit to Division I institutions, which are quickly providing NIL offers to athletes who are taking the spots that Plaintiff would otherwise fill.[1]

22. Plaintiff's case parallels that of Nyzier Fourqurean, who challenged the NCAA's Five-Year Rule after transferring from Division II to Division I, arguing it unfairly restricted his economic opportunities. Fourqurean's complaint (Case No. 3:25-cv-00068-wmc, D.E. 1)

---

[1] Plaintiff has until May 22, 2025 to notify the interested colleges as to which school he will be attending next year, should he be allowed to participate in Division I basketball.

highlighted the NCAA's arbitrary rule application and anticompetitive effects, claims Plaintiff adopts here.

23. Following the 2021 *NCAA v. Alston* decision (594 U.S. 69) and the efforts of states across the country adopting NIL laws to restrict the NCAA from enforcing its prior prohibitions to restrict athletes from earning money from their fame, the NCAA lifted its prohibition on NIL compensation on July 1, 2021, but such opportunities are predominantly available to Division I athletes, not Division II, where Plaintiff began his career.

24. Plaintiff will graduate from C of C in May 2025 with a Bachelor of Arts in Political Science and plans to pursue a Master's degree if granted an additional year of eligibility.

## COUNT I: PER SE VIOLATION OF § 1 OF THE SHERMAN ACT, 15 U.S.C. § 1

25. Plaintiff incorporates by reference every allegation contained in this Complaint.

26. Defendant has a dominant position in the relevant market, and in fact, makes the market.

27. Defendant's contracts, combinations, and relationships consist of a continuing agreement, understanding, and concert of action among the defendant and its members, vendors, and customers, the substantial terms of which are to artificially fix, decrease, maintain, and/or restrict the amount of college athletic services in the United States, its territories and possessions.

28. Simultaneously, Defendant's contracts, combinations, and relationships consist of a continuing agreement, understanding, and concert of action among the defendant and its members, vendors, and customers, the substantial terms of which are to artificially fix, increase, maintain, and/or inflate prices paid for the performance and/or broadcast of college sports contests in the United States, its territories and possessions.

29.     And/or, alternately, Defendant's contracts, combinations, and relationships consist of a continuing agreement, understanding, and concert of action among Defendant and its members, vendors, and customers, the substantial terms of which are to artificially fix, depress, maintain, and/or stabilize prices paid for collegiate athletic services in the United States, its territories and possessions.

30.     Defendant's actions have unreasonably restrained competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

31.     These actions unreasonably restrain competition in violation of Section 1 of the Sherman Act by preventing Plaintiff from competing in an additional year of Division I basketball, depressing his ability to profit from NIL at the highest level.

32.     Defendant's denial of Plaintiff's waiver is arbitrary and capricious, ignoring its own guidelines for exceptions under Bylaw 12.8.1.7.1.1.

33.     Defendant's conduct impacts interstate commerce, producing anticompetitive effects, including: (a) Restraining the number of athletes participating in Division I athletics; (b) Depriving athletes like Plaintiff of competitive benefits and NIL opportunities; and (c) Depressing competition in the NIL market among athletes.

34.     Plaintiff faces irreparable injury and financial damage from Defendant's actions, entitling him to treble damages, attorneys' fees, declaratory judgment voiding restrictive NCAA rules, and a permanent injunction.

**COUNT II: UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF § 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**

47.     Plaintiff incorporates by reference every allegation contained in this Complaint.

48.     As an alternative to Plaintiff's Count I, if the Court determines that Defendant's conduct does not constitute, in whole or in part, a per se antitrust violation, Plaintiff alternatively

pleads that Defendant's conduct when analyzed, in whole or in part, via the "quick look" "rule of reason" analysis or via the full "rule of reason" antitrust analysis, violates the Sherman Act.

49. The anti-competitive nature of Defendant's actions is so blatant that a detailed review of the surrounding marketplace is unnecessary. Under this analysis, as the Supreme Court has stated, "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anti-competitive effect on customers and markets." See, *California Dental Association v. FTC*, 526 U.S. 756 (1999).

50. Applying those words to the present case shows that Defendant has violated the Sherman Act.

51. Alternatively, applying a full antitrust analysis of the present case shows that Defendant has violated the Sherman Act.

52. Defendant's rigid application of the Five-Year Rule, specifically the limitation on college athletes to four seasons of intercollegiate competition in a single sport, and waiver denial blatantly restrain trade, requiring no detailed market analysis.

53. Under a full analysis, Defendant's actions produce anticompetitive effects outweighing any procompetitive justification, with less restrictive alternatives available, such as consistent waiver approvals for athletes like Plaintiff.

54. Defendant's conduct directly impacts interstate commerce.

55. These actions organized through the NCAA, which possesses a dominant position in the relevant market, have produced and, unless restrained, will continue to produce, the following anti-competitive effects, among others: (a) Artificially restrain and depress the number of athletes that participate in college athletics; (b) Deprive athletes such as Plaintiff of the benefits of competition as to the amount, terms and conditions of grants-in-aid from NCAA member

institutions; (c) Artificially restrain and depress the ability of athletes to benefit and profit from their name, image, and likeness at the highest level, as well as significant revenue sharing; and (d) Artificially restrain competition in name, image, and likeness services among athletes.

56.     The NCAA's abridgment of Plaintiff's economic rights is a restraint of trade and is not connected to any legitimate non-commercial goals.

57.     The anti-competitive effects of Defendant's scheme substantially outweigh any alleged pro-competitive effects or justifications that may be offered by Defendant.

58.     Reasonable and less restrictive alternatives are available to Defendant's current anti-competitive practices including, but not limited to, allowing all college athletes the same opportunity to extend eligibility when denied participation opportunities beyond their control, so as to not unreasonably restrict their access to the numerous career, NIL, and other benefits available to Division I participants.

59.     Rational, consistent, and unbiased application of its own rules, regulations, policies, and procedures would allow for a more reasonable and less restrictive alternative to Defendant's current anti-competitive practices.

60.     Defendant has recognized this and is considering a change to its eligibility rules, which would provide college athletes, such as Plaintiff, with a fifth year of eligibility (referred to as the "five-in-five" rule). Baylor president Linda Livingston, Chair of the NCAA Board of Governors, recently stated, "I think the five-and-five model is one being considered that could **simplify things**, remove red tape and there would be **a lot more certainly** [sic] for student-athletes. It's a very interesting model to discuss. In theory, it sounds like an interesting **solution**

that would simplify things a lot. My understanding is no redshirts or waivers. You can play five seasons but you only have five years."[2] (Emphasis added).

61. Plaintiff is entitled to recover from the NCAA treble the amount of actual damages as well as an award of reasonable attorneys' fees and costs of suit.

62. Plaintiff is entitled to a declaratory judgment declaring as void and unenforceable any and all NCAA rules, regulations, bylaws, or decisions that prevent his playing college basketball for an additional year in 2025-26.

63. Plaintiff is entitled to a permanent injunction that enjoins Defendant from engaging in the ongoing violations described in this Complaint.

## COUNT III: TORTIOUS INTERFERENCE - OTHER PARTIES

64. Plaintiff incorporates by reference every allegation contained in this Complaint.

65. Plaintiff has prospective business relationships with third parties for the use of his name, image, and likeness.

66. As part and parcel of those relationships, Plaintiff is expected to be a prominent athlete in the community and the nation.

67. The more prominent the Plaintiff is as a college athlete, the more valuable those relationships become.

68. The NCAA knew or should have known about these relationships.

69. The NCAA has interfered with these relationships between Plaintiff and the expectancies of Plaintiff and the third parties.

---

[2] *See* Ross Dellenger, "College sports leaders mulling '5-in-5' rule to eliminate redshirts, waivers and other exemptions." Yahoo! Sports. Jan. 16, 2025. https://sports.yahoo.com/college-sports-leaders-mulling-5-in-5-rule-to-eliminate-redshirts-waivers-and-other-exemptions-211750014.html (accessed Apr. 1, 2025).

70. The NCAA's waiver denial interferes with these relationships, reducing Plaintiff's marketability and earnings potential, entitling him to damages.

71. The NCAA had a duty not to tortiously and/or needlessly interfere in Plaintiff's relationships and especially had a duty not to refuse to follow its own rules, regulations, bylaws, and guidelines, or to act arbitrarily and/or capriciously regarding Plaintiff.

72. The NCAA's interference with the relationship between third parties and the Plaintiff has harmed and will continue to harm Plaintiff.

73. Plaintiff is entitled to damages for the NCAA's interference.

**COUNT IV: BREACH OF CONTRACT - THIRD PARTY BENEFICIARY**

74. Plaintiff incorporates by reference every allegation contained in this Complaint.

75. "The National Collegiate Athletic Association is a member-led organization dedicated to the well-being and lifelong success of college athletes."[3]

76. The NCAA is in essence and is formed by a collection of agreements and conventions between its members.

77. As part and parcel of the agreements that form the NCAA, member institutions must offer certain consideration such as ensuring that college athletes are in good standing, submitting documentation demonstrating compliance with academic programs, and submitting financial data to the NCAA.

78. In exchange, the NCAA offers its member institutions the opportunity to play collegiate sports.

79. As such, the NCAA essentially exists because of one or more agreements between its members to administer and promote college athletics.

---

[3] NCAA 2021 IRS Form 990.

80. College athletes are the purported beneficiaries of these agreements, a point made explicit by the NCAA: (a) "With more than 1,100 member colleges and universities, the NCAA is united around one goal, creating opportunities for college athletes."[4] (b) "The National Collegiate Athletic Association is a voluntary, self-governing organization of four-year colleges, universities and conferences committed to the well-being and development of student-athletes..."[5] (c) "The basic purpose of the Association is to support and promote healthy and safe intercollegiate athletics, including national championships, as an integral part of the education program and the student-athlete as an integral part of the student body."[6]

81. Thus, even though college athletes are not parties to the contracts between the NCAA and its member institutions, those agreements were made for the specific benefit of a designated class of which Plaintiff is a member.

82. The NCAA and its member institutions were competent to enter into the agreements that form the NCAA and allow its member institutions access to the college sports market as administered and controlled by the NCAA.

83. Those agreements are legal, valid, enforceable contracts.

84. College athletes such as Plaintiff were specifically contemplated as beneficiaries of those agreements.

85. As part of those agreements, the NCAA agreed—either implicitly or explicitly—that it would make its decisions and enforce its rules in compliance with its stated rules, regulations, bylaws, and guidelines and do so in a non-arbitrary, non-capricious manner.

---

[4] NCAA 2021 IRS Form 990
[5] NCAA Constitution, Preamble.
[6] NCAA Constitution, Preamble.

86. All necessary conditions and/or precedents, dependent obligations, and/or dependent covenants have been met to enforce that portion of the agreements.

87. Defendant NCAA breached the agreements when it arbitrarily and capriciously denied Plaintiff the ability to play collegiate sports for an additional year in contravention of the NCAA's own rules, regulations, bylaws, and guidelines.

88. Plaintiff has standing to sue Defendant for such a breach as a third-party beneficiary to said agreements.

89. Plaintiff is entitled to Defendant's performance under the agreements.

90. Plaintiff has been harmed and will continue to be harmed by Defendant's breaches.

91. All conditions precedent to filing this breach of contract count have been fulfilled.

## COUNT V: ARBITRARY ENFORCEMENT OF RULES, REGULATIONS, AND/OR BYLAWS

92. Plaintiff incorporates by reference every allegation contained in this Complaint.

93. The NCAA is formed by a collection of agreements and conventions between its member institutions, including the College of Charleston, aimed at governing collegiate athletics and promoting the welfare of student-athletes.

94. As part of these agreements, the NCAA has implicitly and explicitly committed to enforcing its rules, regulations, and bylaws—including Bylaw 12.8.1 (the "Five-Year Rule") and Bylaw 12.8.1.7.1.1 ("Circumstances Beyond Control" exception)—in a consistent, fair, and non-arbitrary manner, ensuring that exceptions are meaningfully considered based on individual circumstances.

95. Plaintiff, as a college athlete at an NCAA member institution, is a third-party beneficiary of these agreements, directly affected by the NCAA's decisions and enforcement actions.

96. Defendant has a duty to Plaintiff to apply its rules in compliance with its stated regulations and to avoid arbitrary, capricious, or selective enforcement, particularly when considering waiver requests under Bylaw 12.8.1.7.1.1, which allows exceptions for "circumstances beyond the control of the student-athlete" that "severely limit meaningful participation."

97. NCAA Bylaw 14.02.14 further defines a waiver as "an action exempting an individual or institution from the application of a specific regulation," requiring formal approval based on "evidence of compliance with the specified conditions or criteria" or "extenuating circumstances."

98. Plaintiff submitted a waiver request on March 21, 2025, through the College of Charleston, supported by extensive documentation, including: (a) his personal statement detailing significant mental stress, anxiety, and cultural adjustments as an international student during his 2020-2021 redshirt year and 2021-2022 Division II season; (b) game-by-game statistics showing his gradual adjustment over the first 12 games of 2021-2022; (c) academic transcripts reflecting his progress despite language barriers; and (d) evidence of lost NIL opportunities at the Division II level.

99. These circumstances—moving from Croatia to the U.S., learning English from scratch, adapting to a new educational system, and competing at a Division II level with limited exposure—constitute "extenuating circumstances" under NCAA rules, akin to those recognized in Fourqurean's case (e.g., mental health challenges following a family death), referenced above.

100. Despite this evidence, the NCAA has denied Plaintiff's waiver request, offering no substantive explanation beyond a rigid application of the Five-Year Rule, which does not account for his unique situation.

101.    This denial mirrors the NCAA's "wooden application" criticized in *Fourqurean v. NCAA* (Case No. 3:25-cv-00068-wmc, D.E. 39), where the court faulted the NCAA for narrowly interpreting Bylaw 12.8.1.7.1.1 to require complete prevention of participation, rather than recognizing severe limitations on meaningful participation.[7]

102.    Plaintiff's 2021-2022 season at SE Oklahoma, while statistically successful (28 games, 16 starts), was not "meaningful" in the context of Division I development or NIL opportunities, as he spent the first 12 games overcoming anxiety and language barriers, only finding his footing mid-season.

103.    Upon information and belief, the NCAA has granted an extra year of eligibility to other college athletes under similar circumstances, such as Denver Jones and Chad Baker-Mazara (all at Auburn), who received additional eligibility after Junior College (JuCo) stints, citing limited NIL opportunities at non-Division I levels—paralleling Plaintiff's Division II experience.

104.    The NCAA's March 14, 2025, approval of an extra year for athletes who competed at JuCo or NAIA schools and exhausted eligibility by 2024-2025 further demonstrates inconsistent rule application, as Plaintiff's Division II background similarly disadvantaged him economically and developmentally.

105.    Defendant's arbitrary, capricious, and selective enforcement of Bylaw 12.8.1 against Plaintiff, while granting relief to others, violates its duty to apply rules fairly and consider individual circumstances, as required by its own bylaws and judicial precedent.

---

[7] The court specifically ruled, "given the substantial size of the market for Division I football players, it is reasonable to infer that defendant's apparent, wooden application of its eligibility rules and exceptions not only caused plaintiff injury but more likely than not impacted the larger market for like college football players." The same is true for Plaintiff in this action, who is a Division I basketball player.

106. Plaintiff has been and will continue to be irreparably harmed by this arbitrary enforcement, losing a year of Division I eligibility, significant NIL earnings (at least $1 million), and professional basketball prospects.

107. Pursuant to Fed. R. Civ. P. 57, this Court has the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed."

108. Plaintiff is entitled to a declaratory judgment declaring as void and unenforceable any NCAA rules, regulations, bylaws, or decisions that prevent his immediate eligibility to play an additional year of basketball at C of C due to arbitrary enforcement.

109. Plaintiff is entitled to a permanent injunction enjoining Defendant from engaging in the arbitrary, capricious, and selective enforcement described herein.

## COUNT VI: DECLARATORY JUDGMENT

110. Plaintiff incorporates by reference every allegation contained in this Complaint.

111. Pursuant to Fed. R. Civ. P. 57, this Court has the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed," providing clarity to Plaintiff's eligibility status and economic rights.

112. Plaintiff seeks a declaration that he has an economic right to market and license his name, image, and likeness at the Division I level, a right impeded by the NCAA's Five-Year Rule and waiver denial. His current NIL earnings of $300,000 and potential NIL earnings of at least $1 million for 2025-2026, as attested by basketball agent Adam Godes of ADS Sports, demonstrate a tangible economic interest recognized in Fourqurean's case as protected under the Sherman Act.

113. Plaintiff seeks a declaration that he has one more year of eligibility to play Division I basketball under a waiver analysis, based on his documented "circumstances beyond control"

(language barriers, cultural adjustments, and Division II limitations), which align with NCAA Bylaw 12.8.1.7.1.1 and judicial critiques of rigid rule application in Fourqurean.

114.   Plaintiff seeks a declaration that he has a right to be treated fairly by the NCAA, consistent with its stated mission to prioritize college athlete (or, as the NCAA uses – "student-athlete") well-being and its contractual obligations to member institutions, of which he is a beneficiary.

115.   Plaintiff seeks a declaration that he has a right to rational, fair, and equitable decisions by the NCAA when applying its rules, regulations, bylaws, and guidelines, a right violated by the NCAA's arbitrary denial, which ignores his unique circumstances and precedent from similar cases (e.g., Junior College/NAIA athletes).

116.   These declarations are necessary to resolve the ongoing uncertainty of Plaintiff's eligibility, protect his economic and athletic opportunities, and ensure the NCAA adheres to its own standards and federal law.

## COUNT VII: RESTRAINING ORDER AND INJUNCTIVE RELIEF

117.   Plaintiff incorporates by reference every allegation contained in this Complaint.

118.   The harm Plaintiff faces from the NCAA's denial of his waiver request and enforcement of the Five-Year Rule is irreparable, as the window for collegiate athletics is finite and cannot be restored through monetary damages.

119.   Plaintiff's basketball career at the Division I level—critical for professional exposure and NIL earnings—will end prematurely without an additional year, depriving him of at least $1 million in projected income, as confirmed by agent Mr. Godes' discussions and negotiations with third-parties (50+ high-major teams interested).

120. This harm parallels Fourqurean's irreparable injury, where the court recognized that lost Division I playing time diminished professional prospects and NIL opportunities, a precedent applicable here given Plaintiff's international background and delayed Division I start.

121. Plaintiff's academic journey, culminating in a May 2025 graduation and planned Master's degree pursuit, underscores his commitment to maximizing his collegiate experience, which the NCAA's actions threaten to cut short.

122. No adequate remedy at law exists to compensate for the loss of a Division I season, as monetary damages cannot replicate the unique combination of competition, exposure, and economic benefits (e.g., NIL contracts) tied to Plaintiff's athletic participation.

123. The balance of equities favors Plaintiff, as granting relief preserves his rights without undermining the NCAA's broader eligibility framework, especially given its recent flexibility for Junior College/NAIA athletes and judicial calls for "meaningful exceptions" (*see Fourqurean v. NCAA*).

124. The public interest supports injunctive relief, as it promotes fair treatment of college athletes, aligns with antitrust principles protecting economic opportunity, and ensures the NCAA fulfills its mission to support athlete well-being.

125. Plaintiff seeks a temporary restraining order and permanent injunction enjoining the NCAA from enforcing its rules, regulations, and bylaws—including Bylaw 12.8.1—that prevent him from playing an additional year of Division I basketball, ensuring his immediate eligibility for the 2025-2026 season.

**WHEREFORE**, Plaintiff requests the following:

A. An order from this Court permanently enjoining the NCAA from enforcing its rules, regulations, and/or bylaws that prevent Plaintiff from having an additional year of eligibility playing Division I basketball in 2025-26 under the waiver request;

B. An order that Defendant's enforcement of the rules, regulations, and/or bylaws that prevent Plaintiff from having an additional year of eleibiltiy to play Division I basketball violates § 1 of the Sherman Act, 15 U.S.C. § 1;

C. All damages due to Plaintiff as a result of Defendant's conduct;

D. Treble damages pursuant to 15 U.S.C. § 15;

E. Plaintiff's attorneys' fees, costs and expenses; and

F. For such other relief that the Court may deem just and equitable.

DATED: April 6, 2025

Respectfully submitted,

**THE PEPER LAW FIRM, PA**

*s/ Mark A. Peper*
Mark A. Peper (Fed. Id.: 12134)
Brenna D. Wiles (Fed. Id.: 13073)
548 Savannah Highway
Charleston, South Carolina 29407
T: 843-225-2520
E: mark@peperlawfirm.com


  */s/  Darren A. Heitner*
Darren A. Heitner, Esq.
**Heitner Legal, P.L.L.C.**
215 Hendricks Isle
Fort Lauderdale, FL 33301
Tel.: 954-558-6999
Fax: 954-927-3333
Email: Darren@HeitnerLegal.com
*Pro Hac Vice Pending*

COUNSEL FOR PLAINTIFF