IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANTE BRZOVIC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NATIONALCOLLEGIATE )<br>ATHLETIC ASSOCIATION, )<br>)<br>Defendant. )<br>_____ ) | No. 2:25-cv-02885-DCN<br><br>**ORDER** |

This matter is before the court on plaintiff Ante Brzovic's ("Brzovic") motion for a temporary restraining order ("TRO") and preliminary injunction, ECF No. 5. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

Brzovic moves for the court to enter a TRO and preliminary injunction to enjoin defendant National Collegiate Athletic Association ("NCAA") from enforcing the NCAA's bylaws that regulate the eligibility of student-athletes to participate in intercollegiate athletics. ECF No. 5. Specifically, Brzovic argues that the NCAA's enforcement of NCAA Division I Bylaws 12.8.1 (the "Five-Year Rule") and 12.11.4.2 (the "Rule of Restitution") (together with the Five-Year Rule, the "Challenged Rules") violate Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and South Carolina state-law. ECF No. 5.

### A. The Challenged Rules

The Five-Year Rule limits student-athletes' participation in intercollegiate athletic competition to four seasons within five calendar years. See NCAA Division I Bylaw

1

§ 12.8.1  The five-year period begins when a student-athlete first registers for an academic term in a minimum full-time program of study at a collegiate institution. Id. § 12.8.1.1.  Colleges and universities whose athletics teams participate at the NCAA Division II level are within the definition of qualifying collegiate institutions under the NCAA Division I Bylaws.  Id. § 14.02.4.  Thus, a student-athlete's participation in intercollegiate athletics at the NCAA Division II level is counted against his maximum eligibility to participate at the NCAA Division I level.

The Rule of Restitution provides that, if an ineligible student-athlete obtains a restraining order or injunction against the NCAA from a court and the student-athlete and his member institution conduct themselves in conformity with that injunction, the NCAA may nonetheless impose certain penalties on both the student-athlete and the member institution if the injunction is ultimately vacated, stayed, or reversed.  Id. § 12.11.4.2.

**B. Brzovic**

Brzovic is a Croatian-born, collegiate basketball player.  Id. ¶ 2.  In August 2020, Brzovic moved to the United States from Croatia and enrolled at Southeastern Oklahoma State University ("SE Oklahoma"), an NCAA Division II member institution, to play basketball.  Id. ¶ 3.  Brzovic "redshirted" during the 2020-2021 season, focusing on learning English and adjusting to life in the United States.  Id. ¶ 15.  During the 2021–2022 season, Brzovic competed in twenty-eight games for SE Oklahoma, and he was awarded both all-conference and freshman of the year honors in the Great American

Conference.  Id. ¶ 16.  Despite his success on the court, Brzovic continued to struggle with mental stress, language barriers, and academics.  Id.

In May 2022, Brzovic transferred to the College of Charleston ("C of C") in Charleston, South Carolina, a NCAA Division I member institution, to play basketball.  Id. ¶ 17.  He excelled while competing for C of C during the 2022–2023, 2023–2024, and 2024–2025 seasons.  Id.  In the last two seasons, Brzovic earned between $75,000 and $300,000 in name, image, and likeness ("NIL") compensation.  Id.  Because the 2024–2025 season was Brzovic's fourth season of competition within five calendar years across both NCAA Division I and Division II, Brzovic exhausted his maximum eligibility for intercollegiate athletic competition at the NCAA Division I level under the Five-Year Rule.

On March 21, 2025, C of C submitted a Five-Year Rule waiver to the NCAA, seeking an additional year of eligibility for Brzovic for the 2025–2026 basketball season.  Id. ¶ 17.  C of C stated that Brzovic's unique circumstances—language barriers, cultural adjustments, and limited NIL opportunities while at SE Oklahoma—warranted issuance of the waiver.  Id. ¶ 18.mmThe NCAA denied Brzovic's Five-Year waiver request on April 1, 2025.  Id. ¶ 20.  Brzovic did not appeal the denial.  ECF No. 28.

**C.  Procedural History**

Brzovic filed this action on April 7, 2025.  ECF No. 1, Compl.  His complaint asserts that the Five-Year Rule and Rule of Restitution are per se violations and unreasonable restraints under the Sherman Antitrust Act, 15 U.S.C. § 1.  Id. ¶¶ 25–63.  Brzovic also asserts South Carolina state-law claims for tortious interference, breach of

contract, arbitrary enforcement, declaratory judgment, and injunctive relief. Id. ¶¶ 63–125.

Brzovic filed a motion for a TRO and preliminary injunction on April 7, 2025, seeking to enjoin the NCAA's enforcement of the Five-Year Rule and Rule of Restitution. ECF No. 5. The NCAA responded in opposition on April 22, 2025. ECF No. 21. On May 6, 2025, the court held a hearing on the motion. ECF No. 28. As such, the motion is fully briefed and ripe for the court's review.

## II. STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. See Fed. R. Civ. P. 65. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." United States v. South Carolina, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)), modified in part, 906 F. Supp. 2d 463 (D.S.C. 2012), aff'd, 720 F.3d 518 (4th Cir. 2013). The party seeking a preliminary injunction must make a "clear showing" that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008). To succeed, the movant must satisfy all four of the Winter factors. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated and remanded, 559 U.S. 1089 (2010), reissued in relevant part by per curiam published order, 607 F.3d 355 (4th Cir. 2010). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24.

"A preliminary injunction may be characterized as being either prohibitory or mandatory." League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 235 (4th Cir. 2014). Mandatory relief is "disfavored, and warranted only in the most extraordinary circumstances." S.C. Progressive Network Educ. Fund v. Andino, 493 F. Supp. 3d 460, 466 (D.S.C. 2020) (quoting Taylor v. Freeman, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). "Mandatory preliminary injunctions . . . should be granted only in those circumstances when the exigencies of the situation demand such relief." Pierce v. N.C. State Bd. of Elections, 97 F.4th 194, 209 (4th Cir. 2024) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)).

### III.   DISCUSSION

#### A.  Mandatory Preliminary Injunction

Before turning to the merits of Brzovic's motion, the court briefly pauses to determine whether the relief he seeks is mandatory or prohibitory. Courts determine which of these categories an injunction falls in by looking to whether the injunction would alter or preserve the status quo. See S.C. Progressive Network Educ. Fund, 493 F. Supp. 3d at 466. For these purposes, the status quo is "the last uncontested status between the parties which preceded the controversy." Id. (quoting League of Women Voters of N.C., 769 F.3d at 236). While "mandatory [temporary restraining orders and preliminary] injunctions alter the status quo [generally by requiring the non-movant to do something], prohibitory [ones] aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." Id. (alterations in original) (quoting League of Women Voters of N.C., 769 F.3d at 235–36). Even if a party is being required by the

5

court to undertake an affirmative obligation to restore the status quo, such is still prohibitory. League of Women Voters of N.C., 769 F.3d at 236.

Here, Brzovic is asking the court to prevent the NCAA from enforcing it's the Challenged Rules. ECF No. 5. Preventing the NCAA from enforcing rules currently in effect would alter the status quo, and the court, therefore, finds that Brzovic seeks a mandatory injunction. See S.C. Progressive Network Educ. Fund, 493 F. Supp. 3d at 466.

### B. Likelihood of Success on the Merits

Brzovic has not met the exceptionally high standard warranting a TRO or mandatory preliminary injunction. In particular, the court finds that Brzovic has failed to demonstrate a likelihood of success on the merits of his Section 1 claims.[1]

To demonstrate likelihood of success, Brzovic "need not establish a 'certainty of success,' but must make a clear showing that he is likely to succeed at trial." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

Brzovic contends that the Five-Year Rule is a per se violation and unreasonable restraint under Section 1 of the Sherman Antitrust Act by counting his Division II participation against his Division I eligibility. ECF No. 5 at 7. At its core, Brzovic's argument is that the NCAA's limit on maximum student-athlete eligibility for participation at the Division I level—consequently, limiting his access to NIL compensation—constitutes an antitrust violation. See id. In contrast, the NCAA asserts that the Five-Year Rule cannot be subject to antitrust scrutiny because its eligibility rules

---

[1] The court does not address Brzovic's state-law claims here because his motion for a TRO and preliminary injunction is predicated only his claims under Section 1 of the Sherman Antitrust Act. See ECF No. 5.

6

are non-commercial criteria with which student-athletes must comply to participate in intercollegiate athletics. ECF No. 21 at 7–14. The NCAA further argues that Brzvoic has not met his burden under the rule of reason analysis because Brzovic has failed to define the relevant market, evince anticompetitive harm, or rebut the NCAA's showing of procompetitive justifications of the Five-Year Rule. Id. at 14–36.

Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. "To establish a § 1 antitrust violation, a plaintiff must prove (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 423–24 (4th Cir. 2015) (quoting N.C. State Bd. of Dental Exam'rs v. FTC, 717 F.3d 359, 371 (4th Cir. 2013)).

Section 1 "outlaw[s] only unreasonable restraints." Ohio v. Am. Express Co., 585 U.S. 529, 540 (2018) (quoting State Oil Co. v. Khan, 522 U.S. 3, 10 (1997)). Courts apply the three-step, burden-shifting rule of reason analysis to evaluate whether a restraint is unreasonable. Id. at 541; see Nat'l Collegiate Athletic Ass'n v. Alston, 594 U.S. 69, 91–93 (2021) (analyzing NCAA bylaws under the rule of reason); Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla., 468 U.S. 85, 100–104 (1984) (same). "Under this framework, the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." Id. "If the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint." Id. at 542. "If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate

7

that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." Id.

The rule of reason analysis requires the court to "conduct a fact-specific assessment of market power and market structure to assess a challenged restraint's "actual effect on competition." Ohio v. Am. Express Co., 585 U.S. 529, 541 (2018). The court's inquiry looks to whether a challenged restraint harms competition depending on the "circumstances, details, and logic of a restraint to ensure that it unduly harms competition before a court declares it unlawful." Alston, 594 U.S. at 97 (quoting Cal. Dental Ass'n v. FTC, 526 U.S. 756, 781 (1999)). The rule of reason is not an "inflexible substitute for careful analysis." Id.

At the outset, the court is not convinced that the Five-Year Rule is subject to antitrust law such that Brzovic could maintain his Section 1 claims. Brzovic argues that the court should view the Five-Year Rule as commercial in nature and purpose, rather than merely an eligibility rule, following the Supreme Court's decision in Alston, 594 U.S. 69. ECF No. 5–7. The court disagrees. The Sherman Antitrust Act "primarily was intended to prevent unreasonable restraints in "business and commercial transactions.""  Smith v. Nat'l Collegiate Athletic Ass'n, 139 F.3d 180, 185–86 (3d Cir. 1998) (quoting Apex Hosiery Co. v. Leader, 310 U.S. 469, 493 (1940)), vacated on other grounds, 525 U.S. 459 (1999). The text of the Five-Year Rule contains only regulations and guidance on student-athlete eligibility to participate in intercollegiate athletics—the text does not include any mention of business or commercial transactions. See NCAA Bylaw § 12.8.1. Importantly, Brzovic fails to show that this contention is supported by any binding legal authority.

Notably, the court is without a sufficient record to perform a proper, fact-intensive rule of reason analysis of Brzovic's Section 1 claims. See Am. Express, 585 U.S. at 541. Brzovic has provided only a cursory, unsubstantiated definition of the relevant market for the court to analyze. See ECF No. 5 at 7–9. Therefore, the court the court cannot make the necessary factual determinations or examination of the relevant market circumstances, market power, and market share. See Dickson v. Microsoft Corp., 309 F.3d 193, 206 (4th Cir. 2002). Indeed, at the hearing, both parties' expert economists testified that a substantial amount—if not all—of the econometric data and empirical analysis required for the court to properly perform a rule of reason analysis in this matter does not exist. See ECF No. 28.

Further, Brzovic has not pointed to any objective evidence of market-wide harms to competition or consumers beyond maintaining that enforcement of the Five-Year Rule will result in loss of his eligibility and harm to his NIL opportunities. See ECF No. 5 at 7–9. Brzovic's allegations of individualized harm cannot not support a claim under Section 1. See Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 338 (1990) ("[A]ntitrust laws were enacted for 'the protection of competition, not competitors.'" (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962)); Dickson, 309 F.3d 193, 206 (4th Cir. 2002) ("To have an anticompetitive effect, conduct must harm the competitive process and thereby harm consumers.").

Because Brzovic has not shown that the Five-Year Rule is subject to antitrust law and the court is without sufficient evidence to conduct a fact-specific assessment of the relevant market and determine whether the Challenged Rules cause anticompetitive harm under the rule of reason analysis, see Am. Express Co., 585 U.S. at 541, 543, Brzovic has

9

not made a clear showing that he is likely to succeed on the merits. See Di Biase, 872 F.3d at 230. Thus, the court denies Brzovic's motion.[2]

### IV.   CONCLUSION

For the foregoing reasons the court **DENIES** Brzovic's motion for a TRO and preliminary injunction.[3]

**AND IT IS SO ORDERED.**

 

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**May 11, 2025**
**Charleston, South Carolina**

---

[2] Because Brzovic failed to make a clear showing of likelihood of success on the merits, the court need not consider the remaining Winter factors. See Real Truth, 575 F.3d at 346–47; Winter, 555 U.S. at 22; accord Stinnie v. Holcomb, 77 F.4th 200, 208 (4th Cir. 2023) (quoting Winter, 555 U.S. at 22)), rev'd and remanded on other grounds sub nom. Lackey v. Stinnie, 145 S. Ct. 659 (2025); see also Starbucks Corp. v. McKinney, 602 U.S. 339, 346 (2024).

[3] As the court stated at the hearing, a subsequent order addressing the Brzovic's remaining claims is to follow this order. The NCAA will have twenty-one days from the issuance of this order to answer Brzovic's complaint.